## W. L. GREEN *vs.* GEORGE POPE *et al.*

### IN EQUITY.   BEFORE HARRIS, C.J.

### APRIL, 1879.

Specific performance decreed, of a contract for sale of land, in favor of the vendee, as against the vendor and a purchaser from him: it appearing that the contract of sale was absolute and not conditional: that the vendor, by his actions, waived any tender by the vendee of a deed or the purchase price: and that the subsequent purchaser from the vendor was put upon enquiry and had sufficient notice of the first sale.

### DECISION OF HARRIS, C.J.

It is alleged by this bill that the defendant Pope executed an instrument on the 8th of February last, which is called, throughout these proceedings, an agreement to sell the property in question, and which partly reads as follows: "For the consideration hereafter mentioned and one dollar, George Pope

hereby sells to W. L. Green, all the property of his plantation at Waipunalei, District of Hilo, Hawaii, consisting of, etc."

The defendant Pope in his answer admits that he signed the instrument, but says that he did so under the belief that it was a mere basis for the negotiation of the sale of the property, and was not to be binding if he (Pope) could get better terms from other parties.

It is alleged in the bill that the defendant Pope gave up the property to plaintiff's agent, and the defendant Pope replies that he did not do so, but that some person in the employ of the plaintiff did take forcible possession without his authority; and he likewise denies that he gave up the books of account in the bill of complaint mentioned.

A great deal of testimony was taken upon this point, and great stress seems to be laid upon it by the defendant Pope. But the whole thing is immaterial, since the question now is, not whether the defendant Pope did give the property up, but whether he ought to have given it up, and whether the defendant ought now to be compelled to give it up. The testimony is, probably, introduced by the plaintiff, for the purpose of showing that the action of Pope was not that of one who thought he had a reserved right to find another purchaser for a better price; and certainly it is clearly proved, by Mr. Pope's testimony itself, as well as that of others, that he did deliver up the books to Mr. Green.

The agreement of the 8th February contains no clause indicative of any reservation of a right to re-sell the place; and Mr. Green admits that before the signing of the agreement, he advised Mr. Pope to try and get better terms, but says that Pope replied to him that he had been to everyone and could do nothing, and avers that neither at the time of making the agreement, nor subsequently, did he make any condition of the kind; and Mr. Pope, who was examined on the stand, does not show, at any time, any conversation with Mr. Green which indicated a permission on Mr. Green's part for him to re-sell the land. It is clearly established, and Mr. Green testifies to the same effect,

that if defendant Pope desired to take $5000 worth of shares in the Ookala Sugar Company instead of the $4500, he might do so, but this is very far from an agreement or understanding that he might re-sell the land to others; it is merely a proposition on the part of the plaintiff to substitute one mode of payment for another, if the defendant should so desire, and the defendant said he would take the matter into consideration. Then there is no evidence whatsoever of any proposition or assent on the part of Mr. Green, either at the time of writing the agreement, or signing, or at any time subsequent, to the effect that Pope might re-sell the property. The sale was unreserved and complete, and one that, if its conditions are kept on the part of the plaintiff, ought to be enforced; but the defendant says that no deed of transfer of said property to the plaintiff has ever been tendered him for execution, nor has he ever been offered or tendered the sum of $4500 or promissory notes with a satisfactory endorsement as provided for by the agreement. At the hearing, promissory notes of the plaintiff with an endorser were offered, and a constant offer was made during the argument to pay cash. This, however, is immaterial, as will be seen hereafter; but still I allude to it to say that no man can avoid his contract when made for notes by simply saying that the name of the endorser is not agreeable to him; the farthest that could be ruled would be that the money could be obtained on notes, if the payee should endorse them without recourse to himself; but plaintiff was not obliged to tender any conveyance or notes at all under the circumstances; for as regards a conveyance, Pope discharged Green from the necessity of preparing one "by signifying that he never would execute it." Chitty on Contracts, 11th Ed., Vol. I., p. 425. "When one party demands of the other the performance of a mutual agreement by which concurrent acts are to be performed by each party, the offer on the part of the party making the demand to perform his part of the agreement is implied or understood; and when the other refuses to comply he thereby dispenses with any other offer." *Tinney vs. Ashley,* 15 Pick., 546. "The failure to deduce a title

or a wrongful re-sale by the vendor renders the preparation and tender of a conveyance by the purchaser unnecessary. Chitty on Contracts, *supra* p. 428. So likewise it was unnecessary to tender the notes so long as they aver in their bill a willingness and readiness to comply with their part of the contract under the circumstances; for where the declaration shows that the defendant had conveyed to a stranger the land which he promised to convey to the plaintiff, this excuses the plaintiff from tendering the money and would entitle him to damages for the breach of the contract." 16 Mass., 166. So that it is clear, that so far as the defendant Pope is concerned, there is no reason why he should not be decreed to a specific performance of his contract if the lands were still in his hands, and thus the question arises as regards the defendant Lidgate.

"If a man acquiring property has, at the time of the acquisition, notice of an equity binding the person from whom he takes in respect of the property, he is bound to the same extent and in the same manner by the same equity. The purchaser of property if the vendor has contracted to sell, is, if he has notice of the contract, bound by the same equity by which the vendor whom he represents was bound." Kerr on Fraud and Mistake, p. 234, and the cases therein quoted.

Now, it appears by Lidgate's testimony that when he came to Honolulu, he referred to the records of the office of the Registrar of Conveyances, and finding no deed registered there, deemed himself free to purchase this land. But, says Judge Story, Equity Jurisprudence, Vol. I., §397: "The object of all acts of registration is to secure subsequent purchasers and mortgagees against prior secret conveyances and encumbrances. But where such purchasers and mortgagees have notice of any prior conveyance, it is impossible to hold that it is a secret conveyance, by which they are prejudiced. On the other hand, the neglect to register a prior conveyance is often a matter of mistake or of overweening confidence in the grantor, and it would be a manifest fraud to allow him to avail himself of the power, by any connivance with others, to defeat such prior conveyance."

And Lord Hardwicke remarks that "the taking of a legal estate after notice of a prior right, makes a person a *mala fide* purchaser." If a person does not stop his hand, but gets the legal estate, when he knows the equity was in another, *machinatur ad circumveniendum.* (He makes schemes for the purpose of circumventing.)

Now let us apply these principles of law to Lidgate's position and see how he stands. He says he saw the *Gazette,* in which there was a notice that the sale to Green had been made. Now this, of course, would not be proof that the man sold his place, but was sufficient to put Lidgate on his guard. He says that he asked Pope whether he was going to take him down to Honolulu on a fool's errand. He says, farther, that he had the conversation with Mr. Arnold, which Mr. Arnold details, and Mr. Arnold says he had the copy of the agreement which he had sent for. He further says that he asked Pope whether he had sold the place, and that Pope told him he had not; that he heard various statements about it, so he went to headquarters (Mr. Pope), and adds, "I didn't want to know whether he (Pope) had sold the place or not, because he (Pope) told me he had not." Now the difficulty in that respect was that it appears that he was notified that there was an agreement, a copy of which was directly accessible to him, but it appears that he didn't desire to read it; and Pope therefore was not the headquarters, but Green was; Pope was the last man from whom he could seek information on the subject, for the very allegation which Arnold was making in behalf of his employers was that he had this agreement or a copy of it; that he would send for it. Now it was Mr. Lidgate's duty to look at that agreement. One cannot shut their eyes and ears and then say the facts do not exist. Beside all this, Mr. Lidgate admits the conversation with Mr. Green before he gave the notes for the land as by his agreement, in which conversation Mr. Green set forth his agreement and offered to show it. Lidgate admits that he knew thoroughly that Pope was not acting in good conscience, but says that he didn't think that Mr. Pope's good or bad conscience had anything to do with him;

neither had it, but Mr. Lidgate's knowledge of Mr. Pope's not acting in good conscience had a good deal to do with him. All this conversation with Mr. Green occurred before Mr. Lidgate had given his notes, therefore, by every rule of equity and justice Mr. Lidgate is bound by the acts of Mr. Pope, nor will he suffer any inconvenience other than that which he has brought upon himself, namely, the inconvenience of defending this action; for the notes which he had given to Mr. Pope will be of no value against Lidgate, unless they may be in the hands of third parties for value; which it appears they are not; so that when Mr. Lidgate shall have made a quit claim deed of the property and surrendered it, he will be exactly in the same position which he would have been if he had never interfered with the purchase. Therefore, it follows that Lidgate likewise must be ordered to convey the property, and to give up the possession of it, in accordance with the prayer of the petition; and when counsel shall have prepared a form of decree and order in accordance with the foregoing I will sign it, but before signing it, the plaintiff must pay into Court, for the use of Mr. Pope, the sum of $4500, less the amount of note signed by Mr. Pope and endorsed by the plaintiff in favor of Mr. Lenehan; and must likewise pay into Court the aforesaid note duly cancelled, since I cannot undertake to adjudicate on the subject of good or bad endorsement on the notes.

*Messrs. Davidson & Bickerton,* for complainant.

*Mr. Preston,* for respondents.

Honolulu, April 24, 1879.